UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DENYS RUMMERFIELD, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No. 4:13-cv-04012-SLD |

## ORDER

Plaintiff Denys Rummerfield appeals the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f. This matter comes before the Court on the Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendant's Motion for Summary Affirmance, ECF No. 14. For the following reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Affirmance.

## BACKGROUND

Rummerfield filed applications for DIB and SSI on August 27, 2009, alleging that she became disabled as of March 1, 2005. R. 19. Both applications were denied on November 10, 2006. *Id.* Rummerfield requested reconsideration; her claims were denied a second time on July

20, 2010. *Id.* She requested a hearing, which was held via video conference on August 30, 2011, before Administrative Law Judge ("ALJ") Shreese M. Wilson. *Id.* Rummerfield testified at the hearing, as did her sister, Deanne Jones, and a vocational expert, Ronald Malik. R. 44–78.

ALJ Wilson found that Rummerfield had five severe impairments: degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), a cerebral aneurysm with headaches, obesity, and an affective mood disorder. R. 22. The ALJ found that these impairments or combination thereof did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) ("Listing of Impairments"). *Id*. ALJ Wilson also found that Rummerfield retained the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following additional limitations:

> [Rummerfield must] never climb ladders, ropes or scaffolds, she can occasionally crawl or climb ramps or stairs, she must avoid concentrated exposure to irritants such as dusts, fumes, odors, gases and poor ventilation, and she can perform no more than simple, routine, repetitive-type tasks in an environment free of fast-paced production requirements with no more than occasional contact with the general public, co-workers or supervisors.

R. 23. Based Malik's testimony, ALJ Wilson found that there were a significant number of jobs in the national economy that Rummerfield could perform, such as marker and assembly press operator. R. 28. As a result of this analysis, the ALJ found that Rummerfield was not disabled from March 1, 2005, through the date of her decision, September 19, 2011. *Id.* On December 14, 2012, the Appeals Council denied Rummerfield's request for review, making the ALJ's decision final. R. 1. Rummerfield filed the instant action on February 14, 2013, requesting the Court's review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## LEGAL FRAMEWORK

### I.  District Court Review of the ALJ Decision

A court's function on review is not to try the case de novo or to supplant the ALJ's findings with the court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  Instead, the court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000).  To determine whether substantial evidence exists, the court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)).  Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported.  *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Although great deference is afforded to the determination made by the ALJ, the court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted).  Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id*. at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)).  The ALJ has a duty to "minimally articulate his or her justification for

rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)).

Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Scott*, 297 F.3d at 595. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)). If there is an error of law, "reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

## II. Entitlement to Benefits

In order to be entitled to DIB and SSI, a claimant must show that his inability to work is medical in nature and that he is totally disabled.[1] Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *See McNeil v.*

---

[1] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. §§ 404.1500–404.1599 (DIB) *with* 20 C.F.R. §§ 416.900–416.998 (SSI).

*Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the claimant:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments;

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2, or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the claimant is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 requires the ALJ to proceed to step 4, where the ALJ will make a finding about the claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC "measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied." *Bowen v. New York*, 476 U.S. 467, 471 (1986) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). If, on the other hand, the claimant cannot perform his past relevant work, then the RFC is used in step 5 to determine whether the plaintiff can adjust to other work. 20 C.F.R. § 404.1520(e).

The claimant has the burden of production and persuasion at steps 1 through 4. But once the claimant shows an inability to perform past work (step 4), the burden shifts to the

Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

**DISCUSSION**

Rummerfield argues the ALJ ignored substantial record evidence or made findings contrary to the evidence concerning her COPD, aneurysm and headaches, obesity, and frequent hospitalization.[2] Pl.'s Mot. Summ. J. 2–3, ECF No. 11.

**I. COPD**

Rummerfield argues that the ALJ ignored a 2005 physician's report noting Rummerfield had been hospitalized for COPD at least 40 times in the prior three years. Pl.'s Mot. Summ. J. 2 (citing R. 421).[3] The ALJ does not specifically mention these 40 hospital visits, but she "need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ does discuss several medical findings from 2005 to 2009 to support her conclusion that Rummerfield's COPD did not foreclose all work ability. R. 24. In particular, the ALJ cited: a January 2009 pulmonary function study noting "moderate" COPD, a "mild reversible obstructive unrestricted pattern," and symptoms "well above listing" level, R. 706–10; progress notes from Rummerfield's visits to the Community Health Care clinic from 2007 through 2009 showing "only intermittent breathing problems" and wheezing, and no rales, rhonchi, edema, cyanosis, or clubbing, *see* R. 831–49; an indication by a Genesis Health Group treating source that Rummerfield retained "full ability to work" following June 2009

---

[2] Rummerfield also argues that the ALJ's finding some ability to work on her part is contrary to the evidence, specifically an April 27, 2005 Disability Certificate. Pl.'s Mot. Summ. J. 3–4. The Certificate, however, had no applicability to Rummerfield's work ability for purposes of awarding DIB or SSI benefits. Rummerfield must demonstrate an inability to work due to an impairment lasting for 12 consecutive months in order to qualify for benefits. *See* 42 U.S.C. § 423(d)(1)(A). The Certificate by its own terms permitted Rummerfield to return to work on May 16, 2005. R. 614.

[3] Rummerfield also argues that the ALJ ignored additional attempts by doctors to admit Rummerfied, which she refused. Pl.'s Mot. Summ. J. 2. However, the hospital record Rummerfield cites in support related to her September 3, 2005 admission for "altered mental status," not COPD symptoms. R. 472–74.

hospitalization due to respiratory issues, R. 904; and a July 2009 pulmonary function test showing, again, "moderate" obstruction, R. 911. This evidence is consistent with the ALJ's conclusion that, while Rummerfield undeniably suffered from COPD, her symptoms did not "prevent all work," R. 24. Further, Rummerfield does not proffer records from each of these 40 visits showing their results and indicating their connection to her COPD. The ALJ's failure to specifically address the 40 alleged hospitalizations—whose individual circumstances may or may not have supported disabling COPD, or even have all related to Rummerfield's COPD—is not erroneous given her marshaling of substantial available evidence in support of her determination. *See Cannon*, 213 F.3d at 975.

## II. Cerebral Aneurysm and Headaches

Rummerfield argues that the ALJ ignored her precipitous weight loss over three weeks in 2005, her chronic headaches, and her brain aneurysm in finding her not disabled. Pl.'s Mot. Summ. J. 2–3.

In assessing the credibility of Rummerfield's claims regarding the debilitating effects of her various physical pains, the ALJ noted the absence of "[u]sual objective signs of severe pain, such as abnormal weight loss." R. 25. However, a physician noted on November 10, 2005, that Rummerfield reported losing 20 pounds over the prior three weeks, R. 425, and Rummerfield testified at her hearing that she had involuntarily lost about 62 pounds in the preceding 11 months due to "stomach problems" resulting from lack of "proper medical care," R. 48. The ALJ did not discuss this evidence, and does not cite any evidence to support her finding that Rummerfield suffered no abnormal weight loss. The Commissioner argues that the weight loss is irrelevant to Rummerfield's impairments at issue because the treating doctor at the time suggested it was due to a bacterial infection. Def.'s Mem. in Supp. Mot. Summ. Affirm. 10,

7

ECF No. 15. However, the physician made no such finding. She suggested that the abdominal pain and diarrhea that Rummerfield was simultaneously experiencing could be rooted in a bacterial infection given Rummerfield's recent antibiotic use, but concluded that the etiology of her symptoms "is uncertain at this point in time." R. 426. More to the point, the ALJ makes no such effort to explain Rummerfield's weight loss on these grounds, ignoring evidence of it entirely, and therefore the Court would be merely speculating if it found that the ALJ discounted this evidence on the Commissioner's proposed basis. Even if the ALJ found this evidence unpersuasive, she had a duty to explain her reason for rejecting evidence that squarely contradicted a finding that she cited no evidence to support. *See Indoranto*, 374 F.3d at 474.

Contrary to Rummerfield's theory that the ALJ misinterpreted the evidence to find that she had no aneurysm, Pl.'s Mot. Summ. J. 2, the ALJ did note the September 3, 2008 MRI physician's report confirming the existence of the aneurysm. R. 25. The ALJ observed that the report described a "tiny basilar tip aneuryism," and stated that Rummerfield had a history of this condition and was reporting the "worst headache of [her] life." R. 25, 820. However, the ALJ did not explain how Rummerfield's aneurysm did or did not contribute to her physical condition and work limitations, perhaps believing that "tiny" implied "harmless" and spoke for itself. *See* R. 25. The physician, however, made no such implication: while he did not observe "abnormal enhancement" in the regions visible, he noted he that had trouble seeing some arteries, and recommended "comparison with outside studies" to "evaluate for changes." R. 820. Nor does the rest of the record clearly convey that the aneurysm is totally innocuous. While a state consulting physician noted that the aneurysm "has been too small to require treatment," R. 961, other evidence implies that Rummerfield's obesity has prevented potential treatment, *see* R. 23, and at least one physician connected the aneurysm to the headaches Rummerfield suffered, *see*

8

R. 61. Since she identified Rummerfield's aneurysm as a severe impairment, the ALJ's failure to discuss its implications for Rummerfield's ability to work is concerning.

Similarly, the ALJ noted and then failed to explain the significance of apparently chronic headache symptoms. The ALJ recited the timeline of Rummerfield's treatment for headache pain, which appeared to be falling in severity and frequency until a dramatic reversal in July 2007, when, the ALJ notes, Rummerfield said she had headaches all the time. R. 25. Finally, the ALJ notes that Rummerfield received treatment in February and April 2008 for headache pain. *Id.* One would expect the ALJ to explain how the apparent resurgence in intensity of Rummerfield's headaches nevertheless does not mean she was disabled, but the ALJ instead moves on to discuss Rummerfield's obesity and credibility. *See id.* The Court cannot trace the path of the ALJ's reasoning from her evidentiary narrative to her finding that Diaz was not disabled. *See Scott*, 297 F.3d at 593.

The Commissioner argues that the ALJ did account for Rummerfield's headaches in her later discussion of relevant credibility factors, such as Rummerfield's non-use of strong painkillers, noncompliance with recommended headache treatment, an attending physician's disbelief of her symptoms, her failure to pursue other treatment options, and her daily activities. Def.'s Mem. in Supp. Mot. Summ. Affirm. 10–11.

The ALJ could validly discredit Rummerfield's pain claims if he found her incredible. *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ should determine credibility on the basis of several factors, including "the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations and internal quotation marks omitted). An ALJ's credibility determination is

subject to reversal only if it is so unexplained or unsupported as to be "patently wrong." *Id.*; *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

In light of the supporting evidence the ALJ cites—particularly that at least some of Rummerfield's doctors refused to prescribe strong painkillers and Rummerfield failed to follow their alternative pain-relieving recommendations, such as taking other medication or visiting a pain clinic, *see* R. 832, 836—the Court cannot say that the ALJ's decision to discredit the extent of pain alleged by Rummerfield was "patently wrong." *See Jones*, 623 F.3d at 1160. To the extent the potentially disabling effects of Rummerfield's headaches and other physical pain is supported only by her subjective claims, the ALJ did not err in discounting it.

However, an ALJ need determine the credibility of testimony regarding symptoms only to the extent that the alleged symptoms "are of a greater severity than can be shown by objective medical evidence alone." *See* SSR 96-7p. Rummerfield's symptoms are also potentially supported by objective medical evidence establishing that Rummerfield indeed had an aneurysm. The ALJ did not address the impact of the objectively established aneurysm on Rummerfield's headaches and resulting work limitations. The ALJ failed to even "minimally articulate" a justification for disregarding Rummerfield's aneurysm, *see Scheck*, 357 F.3d at 700, despite her duty to address this evidence tending to oppose her finding of no disability, *see Indoranto*, 374 F.3d at 474. *Cf. Goins v. Colvin*, No. 13-3729, 2014 WL 4073108, at *4 (7th Cir. 2014) (noting that an ALJ is not "free to ignore medical problems that may be causing the symptoms the claimant is alleging").

Accordingly, this case must be remanded for the ALJ to explain the impact of Rummerfield's weight loss and aneurysm on the ALJ's findings regarding Rummerfield's impairments and the limitations they impose on her ability to work.

### III. Obesity

Even though obesity is no longer listed as an impairment itself, an ALJ must consider the effect of a claimant's obesity in determining the severity of her impairments. *See Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) (citing SSR 02-1p). An ALJ must undertake "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-1p. However, an ALJ's failure to explicitly address obesity is harmless error where the claimant does not connect obesity to her inability to work and the ALJ adopts the recommendations of physicians who considered the obesity. *Prochaska v. Barnhart*; 454 F.3d 731, 737 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Treating physicians routinely characterized Rummerfield as obese, and the record includes a specific finding of morbid obesity on January 19, 2006, which noted that Rummerfield weighed 249 pounds at a height of 61 inches. R. 710. The ALJ apparently agreed that Rummerfield suffers from obesity, but her analysis on point offers only the cryptic fragment: "Obesity . . . 61 inches  222 pounds (Exhibit 31F)  249 pounds (Exhibit 20F)."[4] R. 25. This bare notation provides the reviewing Court with no insight into the ALJ's reasoning regarding Rummerfield's obesity, *see Scott*, 297 F.3d at 593, and does not establish that the ALJ performed the requisite "individualized assessment" of the impact of Rummerfield's obesity on the severity of her impairments. *See* SSR 02-1p.

The Commissioner maintains that the ALJ's failure to adequately address Rummerfield's obesity is harmless error. The Commissioner maintains that the ALJ considered the opinions of

---

[4] The ALJ elsewhere notes evidence that Rummerfield's aneurysm was inoperable due to her obesity. R. 23. The Commissioner argues that this means that the ALJ did indeed consider her obesity. Def.'s Mem. in Supp. Mot. Summ. Affirm. 12. Not only does this passing reference fall short of the requisite "individualized assessment," *see* SSR 02-1p, but it suggests that Rummerfield's obesity had a compounding effect on the aneurysm, which only heightens the need for the ALJ to address whether and how Rummerfield's obesity increased the severity of her impairments.

11

consulting state agency physicians, who considered Rummerfield's obesity in finding that she could nevertheless do light work. Def.'s Mem. in Supp. Mot. Summ. Affirm. 12 (citing R. 712, 961). However, the ALJ expressly held that these physicians' opinions "were not given significant weight" because they lacked the benefit of reviewing the most recent medical evidence or assessing Rummerfield's credibility at a hearing. R. 27. The Commissioner argues that, nevertheless, the ALJ "considered" their opinions, and that is sufficient. *Id.* (citing *Hisle v. Astrue*, 258 F. App'x 53, 37 (7th Cir. 2007) (noting that Seventh Circuit has recognized harmless error where ALJ fails to address obesity "but arrives at a final conclusion after reviewing the medical opinions of physicians familiar with the claimant's obesity")). Unpublished *Hisle* did not indicate how much reliance is denoted by "reviewing," but the precedential opinions *Hisle* cites found harmless error where the ALJ "specifically predicated his decision on," *Prochaska*, 454 F.3d at 737, or "adopted," *Skarbek*, 390 F.3d at 504, the obesity-examining physicians' opinions. By contrast with these cases, the ALJ's summary mention here of the state physicians' opinions does not suggest that she accorded them any measure of deference. Therefore, the harmless error exception where an ALJ relies on the opinions of physicians who did consider obesity is inapplicable.[5]

The Commissioner additionally argues, without reference to any authority, that to the extent obesity exacerbated Rummerfield's impairments, such exacerbation would necessarily be reflected in medical evidence concerning those conditions. *See* Def.'s Mem. in Supp. Mot. Summ. Affirm. 12. To the extent that this argument interprets the harmless error rule to encompass an ALJ's reliance on any medical evidence that conceivably could have been influenced by a claimant's obesity, the Court declines to adopt an interpretation so far outside the

---

[5] While Rummerfield does not expressly argue the impact of her obesity on her ability to work, *see, e.g.*, *Prochaska*, 454 F.3d at 737, the Commissioner cites no cases where this failure itself, absent the ALJ's reliance on a physician's opinion taking obesity into account, is sufficient to support a harmless error finding.

12

scope of the Seventh Circuit's defined exception. Further, under the Commissioner's logic, the regulatory requirement that an ALJ specifically address obesity would be duplicative and pointless—any potential effect the obesity has on a claimant's work ability would already be reflected in one or more of her impairment's effects on her functional capacity. Accordingly, on remand, the ALJ must perform the requisite "individualized assessment" of the effect of obesity on Rummerfield's work limitations. *See* SSR 02-1p.

IV. **Frequent Hospitalization**

Rummerfield takes issue with the ALJ's treatment of her record of frequent hospitalization on two bases: (1) she claims that the ALJ had no evidentiary basis for finding that many of these visits were frivolous, and (2) she argues that, given the frequency of her visits and the testimony of the vocational expert, the ALJ erred in finding that any employment was possible. *See* Pl.'s Mot. Summ. J. 3–4.

The ALJ found a record of "frequent emergency room visits with no significant objective findings, suggesting that [Rummerfield] uses emergency rooms to treat transient or non-credible problems." R. 25. The basis for this finding by the ALJ is unclear, as the one specific "non-credible" example she cites involved a clinic visit and follow-up, not an emergency room visit, and concerned Rummerfield's claim of right knee pain. R. 25 (citing R. 836). This claim of knee pain appears to be an outlier in the record of Rummerfield's complaints, and is not among her recurrent impairments that the ALJ found to be severe. *See id.*; R. 22. A reasonable mind could not conclude that the majority of Rummerfield's emergency room visits were frivolous on such an attenuated basis. *See Richardson*, 402 U.S. at 401.[6]

---

[6] The Commissioner points to records of emergency room visits by Rummerfield, in which treating sources did not find objective evidence of serious conditions, in arguing that the record supported the ALJ's finding that many of Rummerfield's emergency-room visits were for transient or non-credible concerns. *See* Def.'s Mem. in Supp. Mot. Summ. Affirm. 7–8. However, the ALJ did not mention these records or advance her argument on their basis, and

13

At Rummerfield's hearing, a vocational expert testified that there would be no jobs available to her if she had to miss four days per month due to complications caused by her impairments. R. 75. Rummerfield testified that she was hospitalized approximately 35 times between 2001 and 2005, and that she made 15 or 20 hospital visits in the eleven months leading up to her August 2011 hearing, many of which involved overnight stays. R. 57–58. Allowing two days per each hospital visit, the latter statistic comes close to establishing an average of four days per month in the hospital. And this is just hospital visits: Rummerfield's several impairments could force her to miss work for reasons that do not rise to the level of requiring emergency room trips, such as the severe headaches that, Rummerfield testified, force her to avoid light and sound, R. 58. Moreover, Rummerfield testified that frequent hospitalization already caused her to lose at least one job. *See* R. 57.

While the Court does not view the evidence as necessarily establishing the likelihood that Rummerfield would miss four or more days of work in a month due to her impairments, her rate of hospitalization, coupled with other evidence of her symptoms, suggests that this possibility is plausible. At the least, the ALJ erred by entirely failing to address evidence suggesting that Rummerfield may meet conditions which the vocational expert indicated would preclude all work. *See Indoranto*, 374 F.3d at 474 (noting that ALJ must explain reason for rejecting evidence that does not support her conclusion). On remand, therefore, the ALJ must at least minimally address any likelihood that Rummerfield's impairments would cause her to miss four or more days of work per month, foreclosing the possibility of employment.

---

therefore the Court cannot know whether the ALJ's reasoning paralleled the Commissioner's argument. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[T]he Commissioner's say-so is not enough. . . . We have made clear that what matters are the reasons articulated *by the ALJ*.") (emphasis in original).

## V. Summary

Even a "sketchy opinion" by an ALJ suffices under the substantial evidence standard if the opinion indicates that the ALJ "considered the importance evidence" and enables the reviewing court to trace the ALJ's reasoning. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Here, however, the ALJ fails to explain the significance of certain limitations, such as Rummerfield's aneurysm, obesity and potential absenteeism, depriving the Court of any ability to trace the ALJ's apparent reasoning that these conditions did not further limit Rummerfield's ability to work. *See id.* In light of these gaps in the analysis, a reasonable mind would not find the ALJ's overall conclusion, that Rummerfield is not disabled, to be adequately supported. *See Richardson*, 402 U.S. at 401. Accordingly, the Commissioner's determination is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

## CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF No. 11, is GRANTED, and Defendant Commissioner's Motion for Summary Affirmance, ECF No. 14, is DENIED. The decision of the Commissioner is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this order.

Entered this 29th day of September, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE